DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA and<br>PEOPLE OF THE VIRGIN ISLANDS,<br><br>     v.<br><br>LEVAR POGSON,<br><br>          Defendant. | )<br>)<br>)<br>)<br>)<br>)  Criminal Action No. 2011-017<br>)<br>)<br>)<br>)<br>)<br>) |

**Attorneys:**
**Alphonso Andrews, Esq.,**
St. Croix, U.S.V.I.
   *For the United States and the Virgin Islands*

**Kye Walker, Esq.,**
St. Croix, U.S.V.I.
   *For the Defendant*

## MEMORANDUM OPINION

**Lewis, District Judge**

THIS MATTER comes before the Court on the Motion *in Limine* (Dkt. No. 130) filed by Defendant Levar Pogson ("Defendant") seeking to preclude—on the grounds of attorney-client privilege—the admission of an affidavit he executed on July 29, 2011. The Government filed its opposition to the motion (Dkt. No. 148), and oral argument was held on August 24, 2012.[1] For the reasons that follow, the Court will deny Defendant's motion.

---

[1] A transcript of the proceeding was prepared and is hereafter referred to as "8/24 Tr."

## I. BACKGROUND[2]

On February 25, 2011, Virgin Islands Police Department ("VIPD") officers executed a search warrant at Apartment 195, Building 31, of the John F. Kennedy Housing Community in St. Croix, United States Virgin Islands. In the process of executing the warrant, the officers encountered five people, including Defendant, and also found firearms, ammunition, illegal drugs, a digital scale, and substantial sums of money. As a result, all five individuals in the apartment were arrested. (Dkt. No. 81 at 143).

An information was filed against Defendant in the Superior Court of the Virgin Islands on March 14, 2011 for charges stemming from the February 25, 2011 search. (Suppression Exhibit 1A). On March 29, 2011, an information was filed in the District Court of the Virgin Islands against two other men arrested following the search, including Dwayne Woodrup. (Exhibit 2A). Subsequently, on May 27, 2011, the case against Defendant in the Superior Court was dismissed without prejudice because the Government was unable to sustain its burden of proof at the time. (Exhibits 1D; 1E). Thereafter, Defendant was released from custody.

At some point prior to July 29, 2011, the office of Attorney Eszart A. Wynter, counsel for Mr. Woodrup on the charges then pending before the District Court, received by facsimile an unsolicited document consisting of two handwritten statements containing information that Attorney Wynter deemed exculpatory of his client. (Dkt. No. 81 at 39; 73; Exhibits 3A; 3C).[3]

---

[2] The Court detailed the factual and procedural history of this case and denied Defendant's motion to suppress in a Memorandum Opinion dated June 8, 2012. (Dkt. No. 121). The parties have presented no new evidence with respect to the instant motion *in limine*, instead relying on the transcript of the suppression hearing conducted on December 22-23, 2011 (Dkt. Nos. 80-81), and oral argument held on August 24, 2012.

[3] The exact date of the receipt of the faxed document was not conclusively established by testimonial evidence at the suppression hearing, but the transmission information on the facsimile reads "May 31 11 11:08a." (Exhibits 3A; 3C).

One statement bears Defendant's name, and the other statement bears the name of Mario Felix, another individual arrested following the February 25, 2011 search. (Exhibits 3A; 3C).

After receiving the document, Attorney Wynter dispatched his son to contact Defendant and Mr. Felix about the information regarding his client. (Dkt. No. 81 at 73-75). Telephone contact was made, and Attorney Wynter asked Defendant and Mario Felix to come to his office. (*Id.* at 74). On July 29, 2011, Defendant and Mr. Felix, appeared as scheduled at Attorney Wynter's office. (*Id.* at 37).

During the meeting, Attorney Wynter, Defendant, and Mr. Felix discussed the information contained in the faxed statements. Attorney Wynter prepared affidavits based on their conversation; Defendant and Mr. Felix signed their respective affidavits; and Attorney Wynter notarized the affidavits. (*Id.* at 74-75; Exhibits 3E; 3F). Prior to signing the affidavits, Attorney Wynter told Defendant and Mr. Felix that he would attempt to obtain judicial immunity for them. (Dkt. No. 81 at 120-23).

Earlier, on June 18, 2011, VIPD Sergeant Dino Herbert had interviewed Defendant following Sergeant Herbert's receipt from Assistant United States Attorney Alphonso Andrews of the same statement that had been sent by facsimile to the office of Attorney Wynter. (*Id.* at 184). Sergeant Herbert interviewed Defendant to verify the information in the statement, noting that he "[didn't] want to put the wrong person in jail." (*Id.* at 185). Defendant cooperated during the interview, did not hesitate before signing a form waiving his right against self-incrimination, and answered questions regarding the statement and the events surrounding the search. (*Id.* at 201).

On September 1, 2011, Defendant was indicted in the District Court on charges of possession of crack cocaine with intent to distribute, possession of cocaine with intent to

3

distribute, possession of marijuana with intent to distribute, possession of a firearm during a drug trafficking crime, possession of a firearm with an obliterated serial number, and unauthorized possession of a firearm. (Dkt. No. 1).

Defendant now seeks to preclude the admission of the affidavit he executed on July 29, 2011 at Attorney Wynter's office. (Dkt. No. 130).

## II. DISCUSSION

Defendant contends that the affidavit should not be admitted into evidence at trial because it is protected by the attorney-client privilege. (Dkt. No. 130 at 1).[4] The Government asserts that the privilege does not apply because, *inter alia*, Defendant was not seeking legal services when he met with Attorney Wynter, and the communications were never intended to be confidential. (Dkt. No. 148 at 3). As discussed below, the Court agrees that the attorney-client privilege does not attach to the affidavit.

### A. Legal Standard

"In order for the attorney-client privilege to attach to a communication, it must be (1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." *In re Chevron Corp.*, 650 F.3d 276, 289 (3d Cir. 2011) (internal quotation marks omitted) (citing *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007) (quoting RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS

---

[4] In his motion, Defendant initially requested that the Court exclude both the affidavit and any statements he made to Attorney Wynter on July 29, 2011. (Dkt. No. 130 at 1). However, Defendant retreated from this position at oral argument, instead limiting his request to the exclusion of the affidavit only. (8/24 Tr. at 27-28; 53) ("[W]e're arguing for the affidavit to be stricken from evidence and not the statement."). The Court will limit its discussion accordingly.

§ 68 (2000)).[5] Because this privilege constricts the truth-finding process, it is to be construed narrowly. *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1423 (3d Cir. 1991). The party claiming that evidence is subject to the attorney-client privilege bears the burden of establishing the privilege. *United States v. Voigt*, 89 F.3d 1050, 1067 n.6 (3d Cir. 1996).

## B. Analysis

In the instant case, the Court finds that the affidavit is not protected by the attorney-client privilege because Defendant failed to establish that the communications embodied therein were made: (1) for the purpose of obtaining legal assistance; and (2) in confidence.

### 1. Purpose of Obtaining Legal Assistance

The claim of privilege fails because Defendant has not demonstrated that the communications at issue were made for the "purpose of obtaining or providing legal assistance[.]" *In re Chevron Corp.*, 650 F.3d at 289; *see also* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 72 cmt. c. (noting that for the privilege to apply, "[a] client must consult

---

[5] The Government improperly cites and relies on 5 V.I.C. § 854 as the standard governing the attorney-client privilege in this matter. (Dkt. No. 148 at 3). As a preliminary matter, on October 7, 2011, Title 5, Chapter 67 of the Virgin Islands Code was amended by Act No. 7306, 2011 V.I. Sess. Laws 204-15. As a result of this amendment, 5 V.I.C. § 854 now governs spousal privilege, not the attorney client privilege. The "[l]awyer-client privilege" codified in the Virgin Islands is now set forth in 5 V.I.C. § 852. The language of § 852 differs from that quoted in the Government's motion, although the same basic principles of the privilege remain.

More importantly, the Government's reliance on the Virgin Islands Code is inapt because local law does not govern the Court's privilege analysis in this criminal case. "Under Federal Rule of Evidence 501, evidentiary privileges 'shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience.'" *Wachtel v. Health Net, Inc.*, 482 F.3d 225, 230 (3d Cir. 2007) (quoting FED. R. EVID. 501); *Pearson v. Miller*, 211 F.3d 57 (3d Cir. 2000) (explaining that federal courts are to apply federal law of privilege to all elements of claims—except in civil actions with respect to those elements of claims and defenses as to which state law supplies the rule of decision).

the lawyer for the purpose of obtaining legal assistance and not predominantly for another purpose."). Specifically, Defendant has not demonstrated that his purpose in communicating with Attorney Wynter was to obtain legal assistance; rather, Defendant's actions and the surrounding circumstances militate against such a finding.

In the instant case, Attorney Wynter is the one who initiated the July 29, 2011 meeting at his office with Defendant and Mr. Felix. Upon learning that Defendant and Mr. Felix possessed information that he deemed exculpatory of his client, Attorney Wynter dispatched his son to contact the two individuals. (Dkt. No. 81 at 73-75). When telephone contact was made, Attorney Wynter asked the two individuals to come to his office. (*Id.*). Thus, Defendant and Mr. Felix *did not seek out Attorney Wynter* for the purpose of obtaining legal advice. Instead, *Attorney Wynter sought out the individuals and the allegedly exculpatory information they possessed* with respect to his client, Mr. Woodrup. Counsel for Defendant conceded this point at oral argument stating that "we cannot establish that when the initial contact was made with Attorney Wynter's office or even when [Defendant and Mr. Felix] entered the office, that [Defendant] was seeking legal advice." (8/24 Tr. at 52).

Noting this flaw, counsel for Defendant shifted gears at oral argument and claimed that while Defendant did not initially contact Attorney Wynter for the purpose of obtaining legal assistance, the affidavit should still be protected by privilege because Defendant did not actually execute the affidavit until after Attorney Wynter explained that he would attempt to obtain judicial immunity to protect Defendant from prosecution for his statement. (*Id.* at 52-53) (asserting privilege because "[l]egal advice was given and received and a decision was made based on that legal advice."). This argument is unpersuasive.

At the suppression hearing, Attorney Wynter described the sequence of events as follows:

6

> I explained to [Defendant and Mr. Felix] that I represent [Mr.] Woodrup and if this is the information they gave to [Sergeant] Herbert, I want to know what it was. They gave it to me and I told them well, I'm going to need an affidavit. And I explained to them that I am going to try and get judicial immunity for them, and I filed [the motion for immunity].

(Dkt. No. 81 at 121-22). Attorney Wynter's expression of his willingness to seek judicial immunity for Defendant does not persuade the Court that Defendant's purpose in communicating with Attorney Wynter—including by affidavit—changed. Accordingly, counsel's focus on Attorney Wynter's explanation of his intent to seek judicial immunity, in the context of a communication that—as already acknowledged—was not made for the purpose of securing legal services, does not alter the Court's conclusion that Defendant did not make any communications with Attorney Wynter for the purpose of obtaining legal assistance.

Instead of indicating an intent to obtain legal assistance, Defendant's actions lead to the conclusion that he was simply stating his version of what occurred on the evening of February 25, 2011, which was helpful to Mr. Woodrup. After the charges against Defendant in the Superior Court were dismissed without prejudice and while the charges against Mr. Woodrup in the District Court were still pending, Defendant met with Sergeant Herbert and provided his version of the events of February 25, 2011. (Dkt. No. 81 at 184). After Sergeant Herbert reduced the conversation to writing, Defendant signed a written statement to the same effect. (Exhibit 3D). Thereafter, Defendant responded to a request from Mr. Woodrup's lawyer, Attorney Wynter, to meet with him. Defendant shared the same information with Attorney Wynter, and signed yet another written statement reporting his version of the events of February 25, 2011. (Exhibit 3F). Defendant's interaction with Attorney Woodrup, by itself and in context, reflects Defendant's willingness to share his version of the events, but does not evince an intent to obtain legal assistance.

Thus, Defendant has failed to establish that the communications embodied in the affidavit were made for the purpose of obtaining legal assistance.

## 2. Not Confidential

Further precluding a finding of privilege, Defendant's communications with Attorney Wynter and the resulting affidavit were not made "in confidence." *In re Chevron Corp.*, 650 F.3d at 289. "A communication is [made] in confidence . . . if, at the time and in the circumstances of the communication, the communicating person reasonably believes that no one will learn the contents of the communication except a privileged person . . . or another person with whom communications are protected under a similar privilege." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 71.

Here, Defendant could not have reasonably believed that no one other than Attorney Wynter would learn the contents of the allegedly confidential communication embodied in his affidavit. Over a month before his meeting with Attorney Wynter, Defendant had shared the same communications embodied in the affidavit with Sergeant Herbert, who reduced the remarks to a statement which Defendant signed. (Exhibit 3D). Subsequently, Defendant responded to Attorney Wynter's request and recounted the information he had provided to Detective Herbert. (Dkt. No. 81 at 136-37). Attorney Wynter then indicated that he needed Defendant to sign an affidavit containing the same information, and explained that he would attempt to get judicial immunity for Defendant in conjunction with the disclosure of the contents of their communication. (*Id.* at 120-123).[6] Defendant executed the affidavit.

---

[6] Attorney Wynter did, in fact, include the contents of the affidavit in his subsequent "Motion for Use Immunity." (Exhibit 4B).

Thus, Defendant shared his version of the facts with both Sergeant Herbert and Attorney Wynter. The evidence offered suggests that he executed the affidavit at issue with the knowledge that the information would be shared, especially given Attorney Wynter's explanation that he would attempt to shield Defendant from prosecution relating to the disclosure of his statements. Under these circumstances, Defendant could not have reasonably believed that no one other than a privileged person would learn the contents of the affidavit—his account of the events of the night in question.[7]

Accordingly, the Court finds that Defendant has failed to establish that the communications embodied in the affidavit were made in confidence.

---

[7] Also fatal to a claim of confidentiality, Defendant's communications with Attorney Wynter were made in the presence of a third party—Mr. Felix. (Dkt. No. 81 at 73-79). As the United States Court of Appeals for the Third Circuit recently explained, "if persons other than the client, [his] attorney, or their agents are present, the communication is not made in confidence, and the privilege does not attach." *In re Chevron Corp*, 650 F.3d at 289 (quoting *In re Teleglobe Commc'ns Corp.*, 493 F.3d at 361); *Emmanouil v. Roggio*, No. 11-2148, 2012 U.S. App. LEXIS 20018, *9 (3d Cir. Sept. 24, 2012) (quoting *Watchel*, 482 F.3d at 231, for the proposition that the privilege does not apply in such situations because "a client who speaks openly or in the presence of a third party needs no promise of confidentiality to induce disclosure"). While the Court is aware that communications in the presence of Mr. Felix could be confidential if Defendant and Mr. Felix were in a joint client or common interest relationship, *see Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*, No. 07-127-LPS-MPT, 2012 U.S. Dist. LEXIS 118930, *22-23 (D. Del. Aug. 22, 2012) (discussing joint client relationships and citing RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 75), Defendant—who carries the burden with respect to establishing privilege in this matter—has not raised the possibility, let alone demonstrated, that such a relationship exists in this case.

### III. CONCLUSION

Defendant's claim of privilege fails because he did not establish that his communications were made for the purpose of obtaining legal advice, or in confidence. Therefore, the Court will deny Defendant's Motion *in Limine* (Dkt. No. 130) seeking to preclude the admission of the July 29, 2011 affidavit. An appropriate Order accompanies this Memorandum Opinion.

Date: November 19, 2012                             _____/s/_____
                                                    WILMA A. LEWIS
                                                    District Judge